UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

UNITED STATES OF AMERICA,

    *Plaintiff*,

v.

ROBERT ALLEN HOLT, JR.,

    *Defendant*.
    _____/

CASE NO. 10-CR-20629

DISTRICT JUDGE THOMAS L. LUDINGTON
MAGISTRATE JUDGE CHARLES E. BINDER

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION ON DEFENDANT'S MOTION TO SUPPRESS STATEMENTS
(Doc. 13)

### I.     RECOMMENDATION

**IT IS RECOMMENDED** that Defendant's Motion to Suppress Statements be **DENIED IN PART** as to Defendant's assault-related statements and **GRANTED IN PART** as to Defendant's drug-related statements.

### II.     REPORT

    **A.     Introduction**

Defendant Robert Allen Holt, Jr., was indicted on one count of assault with a dangerous weapon with intent to do bodily harm, in violation of 18 U.S.C. §§ 113(a)(3), 1151, and 1152. (Doc. 1.) Before the Court, pursuant to an order of reference from U.S. District Judge Thomas L. Ludington, is Defendant Holt's Motion to Suppress Statements. (Doc. 13.) The government filed a response opposing the motion (Doc. 14), and a hearing was held on February 11, 2011. The motion is therefore ready for report and recommendation.

**B.     Background**

On September 10, 2010, at approximately 5:30 a.m., Saginaw Chippewa Trial Police Officers John Lake and Harry Ambs were dispatched to a house on the Isabella Federal Reservation in Chippewa Township, Michigan. Prior to arriving on the scene, the officers were informed by the dispatcher that an emergency caller had stated that Robert Holt had a knife and was threatening his girlfriend, Ashawnee Sprague. When the officers arrived at the location, three people exited the residence: Robert Holt (hereafter "Holt" or "Defendant"), Ashawnee Sprague ("Ashawnee"), and Niibin Sprague ("Niibin"), Ashawnee's brother.

What happened next is in dispute. Defendant Holt asserts that he was immediately patted down, handcuffed, and told that he was being detained. Defendant Holt states that after he was handcuffed, one of the officers asked him what happened in the house and he responded (the "assault-related statements"). Defendant seeks to have these statements suppressed pursuant *Miranda* and its progeny, arguing that the statements were made in response to custodial interrogation and the officer had not informed Defendant of his rights or asked whether he wished to waive those rights.

According to Officers Lake and Ambs,[1] when they arrived at the residence, one officer (Lake) took Ashawnee and Niibin back into the house while the other officer (Ambs) remained outside with Defendant Holt. Both officers testified that before Lake returned Ashawnee and Niibin to the house, Defendant Holt was patted down for weapons,[2] but was not handcuffed or told that he was being detained.

---

[1] A defense motion to sequester government witnesses met with no opposition and was granted.

[2] No weapons or contraband were found.

2

The government asserts that the statements should not be suppressed because the officers' version of events is more credible than Defendant's and the officers' conduct was entirely permissible under the *Terry* doctrine, which governs investigative detentions.

During the course of events on the morning in question, Defendant also made statements to the officers, apparently in an attempt to gain leniency, regarding his knowledge of drug activity in the area. Defendant also seeks to have these statements (the "drug-related statements") suppressed. The government does not oppose the suppression of the drug-related statements, noting that they are irrelevant to the assault charge.

### C.     Governing Law

The U.S. Court of Appeals for the Sixth Circuit has explained that "there are three types of permissible encounters between the police and citizens: '(1) the consensual encounter, which may be initiated without any objective level of suspicion; (2) the investigative detention, which, if nonconsensual, must be supported by a reasonable, articulable suspicion of criminal activity; and (3) the arrest, valid only if supported by probable cause.'" *United States v. Waldon*, 206 F.3d 597, 602 (6th Cir. 2000) (quoting *United States v. Avery*, 137 F.3d 343, 352 (6th Cir. 1997)).

An investigative detention occurs when an officer detains an individual who is reasonably suspected of criminal activity, questions the person briefly, and "conduct[s] a carefully limited search of the outer clothing . . . in an attempt to discover weapons. . . ." *Terry v. Ohio*, 392 U.S. 1, 30, 88 S. Ct. 1868, 20 L. Ed. 2d 889 (1968). "[T]he officer may ask the detainee a moderate number of questions to determine his identity and to try to obtain information confirming or dispelling the officer's suspicions." *Berkemer v. McCarty*, 468 U.S. 420, 439, 104 S. Ct. 3138, 82 L. Ed. 2d 317 (1984). "The very nature of a *Terry* stop means that a detainee is not free to leave

during the investigation, yet is not entitled to *Miranda* rights." *United States v. Swanson*, 341 F.3d 524, 528 (6th Cir. 2003) (citing *Berkemer*, 468 U.S. at 439-41).

The requirement for *Miranda* warnings is only triggered when a subject is interrogated either while in custody or its functional equivalent. *Miranda v. Arizona*, 384 U.S. 436, 444, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966). An individual is "in custody" when, under the totality of the circumstances, the "suspect's freedom of action is curtailed to a degree associated with formal arrest." *Berkemer*, 468 U.S. at 440. Pursuant to *Miranda*, "the prosecution may not use statements, whether exculpatory or inculpatory, stemming from custodial interrogation of the defendant unless it demonstrates the use of procedural safeguards effective to secure the [Fifth Amendment] privilege against self-incrimination." *Miranda*, 384 U.S. at 444. The Court recommended the following procedural safeguards: "Prior to any questioning, the person must be warned that he has a right to remain silent, that any statement he does make may be used as evidence against him, and that he has a right to the presence of an attorney, either retained or appointed." *Id.*

### D.    Motion Hearing

Defendant Holt testified on direct examination that as he exited the residence on the morning of September 10, 2010, and walked down the sidewalk toward the driveway, two police patrol cars pulled up. One of the officers approached and said, "Robert, please come here." The officer then patted him down, pulled him away from the others, and told him he was being "detained" for a "domestic." Holt testified that the officer then handcuffed him behind his back and took him to stand over by the patrol car while the other officer took Ashawnee and Niibin into the house. Holt stated that the officer that handcuffed him was a white male by the name of Ambrose.

Holt testified that, after being handcuffed, while he and the officer were standing outside by the patrol car, the officer asked him what happened, and Holt answered the question. Defendant Holt is moving for the suppression of these statements (the "assault-related statements") on the grounds that he was in custody and was not informed of his *Miranda* rights. Holt testified that after this conversation with the officer, which according to his estimate lasted about 5 minutes, the officer placed him in the back seat of the patrol car – still handcuffed – and went into the house. After approximately 15 minutes, both officers came out of the house, removed Holt from the back seat of the patrol car, told him he was under arrest, took pictures of him, and asked him if he needed any medical attention. Holt testified that he was then placed back in the patrol car and driven to the tribal police station, where he was placed in a locked room. A detective came to the room to speak with him and Holt told the detective he was having problems with drugs and proceeded to give the detective information about people who are engaging in illegal drug activity. Defendant seeks to suppress these statements (the "drug-related statements") on the grounds that he was in custody and still had not been read his rights or asked to waive his right to remain silent as required by *Miranda* and its progeny.

On cross-examination, Defendant Holt acknowledged that his memory is affected when he drinks a lot. Defendant Holt stated that the day before the incident, he had been drinking throughout the day and had taken legal mental health medications. Holt testified that the night before the incident, he went to hang out at someone else's house and, while there, drank a couple of beers, took some Xanax (and "was drinking on them") and then did some cocaine. Defendant Holt asserted, however, that he was not drunk because he "only blew a .06" when tested later that morning at the jail.

5

Officer John Lake testified that he was initially dispatched for a "domestic disturbance," and, while on the way to the scene, was told that a knife was possibly involved. He stated that when he arrived and got out of his patrol vehicle, he saw three people exiting the residence. Officer Lake testified that he patted down Holt for weapons and, finding none, instructed Officer Ambs to remain outside with Holt while he took Ashawnee and Niibin inside the residence to talk. He stated that the procedure when dealing with domestic disturbances is to first separate the parties. Officer Lake further testified that at the time he went into the house with Ashawnee and Niibin, Holt had not been placed in handcuffs and had not been told that he was under arrest or being detained.

Officer Lake testified that ten or fifteen minutes later when he came out of the house, Holt was in the back seat of the patrol car and was not handcuffed. After Officer Lake conferred with Officer Ambs, Officer Lake opened the car door and informed Holt that he was being placed under arrest for felonious assault. Officer Lake reached into the back seat of the patrol car and handcuffed Holt with his hands behind his back. Once Holt was handcuffed and placed under arrest, no more questions were asked about what happened in the house and no more discussion of the incident took place.

Officer Harry Ambs testified that he considered Officer Lake the lead officer in this investigation. After Officer Lake took Ashawnee and Niibin in the house, Officer Ambs remained outside with Defendant Holt. They were both standing near the patrol car and Holt was not in handcuffs. Officer Ambs testified that he asked Holt to tell him what was going on, and Holt explained what had happened before the police arrived. This explanation is the statement Holt seeks to have suppressed. After a few minutes, Officer Lake came out and asked Officer Ambs to

6

bring a camera into the house, so Ambs asked Holt if he would mind having a seat in the back of the patrol car while he went inside. Holt agreed and got in the back seat. He was not placed in handcuffs. Officer Ambs testified that he was inside the house for approximately 10 minutes taking photographs and discussing the situation with Officer Lake. Both officers then exited the house. Officer Ambs testified that he witnessed Officer Lake open the back door of the patrol car, tell Holt he was under arrest, and place Holt in handcuffs. Officer Ambs testified that at no time during the entire encounter did he draw his weapon or handcuff Holt.

On cross-examination, Officer Ambs acknowledged that at the time he was outside with Holt and asked him what happened, Holt was not free to leave and "just walk away down the street." Officer Ambs testified, however, that he did not ever communicate to Holt verbally or non-verbally that he was not free to leave. Officer Ambs also acknowledged that he did not at any time read Holt his rights. Finally, Officer Ambs testified that the back doors of the patrol car are locked so that a person in the back seat cannot open a door and get out.

Counsel for Defendant Holt argued that Holt's testimony is clear that he was handcuffed prior to being questioned. Counsel asserted that the crux of the case is that Holt was in Officer Ambs's custody from the moment Officer Lake went into the house, which he claims is supported by the fact that when Officer Ambs needed to go in the house, he put Holt inside a locked patrol car. Counsel argued that because Holt was in custody, he should have been read his rights prior to being asked what happened, and therefore under *Miranda* the statements must be suppressed.

The assistant United States attorney ("AUSA") agreed that the dispositive question is whether Holt was in custody when he gave the statements about what happened in the house, which in this case turns on the disputed fact of whether Holt was handcuffed prior to making his

7

statements. The AUSA argued that Holt's testimony was not credible because there were several inconsistencies, such as whether the first words spoken by the officer were "Robert, please come here" or "you're being detained for a domestic," Holt's erroneous belief that Officer Ambs's last name was "Ambrose," and Holt's mistaken belief that Ambs is white, when in reality he is half Native American. The AUSA also argued that it would not make sense to rely on the memory of someone who had been drinking and taking drugs when the events occurred five months ago over the testimony of two officers who were not impaired and who made detailed written reports of the events within hours of their occurrence. The AUSA further asserted that there is no need to determine whether being placed in the back seat of the locked patrol vehicle was the moment Holt was taken "in custody" or whether it was fifteen minutes later when he was handcuffed and informed he was being arrested, because there is no dispute that the assault-related statements were given prior to either of these events. Finally, the AUSA argued that, pursuant to *Swanson, supra*, an officer with reasonable suspicion that a crime has occurred is allowed to detain a person for a reasonable period and ask a moderate number of questions to confirm or dispel those suspicions, which, according to the AUSA, is exactly what happened here.

### E.     Analysis

Defendant Holt has not disputed that the officers were informed by the police dispatcher that an emergency phone call was placed to the police station and that the caller stated that Robert Holt was threatening his girlfriend, Ashawnee Sprague, with a knife. Officer Ambs testified that he had prior interactions with Defendant Holt and knew who he was. Therefore, when the officers first arrived at the residence, I suggest that they had a reasonable suspicion that Holt had committed a crime and were thus allowed under *Terry* and *Berkemer* to pat down Holt and then

8

detain him and ask him a reasonable amount of questions to either confirm or dispel their suspicions. The fact that Officer Ambs admitted that Holt was not free to walk away at that moment is, I suggest, of no consequence, since "[t]he very nature of a *Terry* stop means that a detainee is not free to leave during the investigation, yet is not entitled to *Miranda* rights." *Swanson*, 341 at 528.

Defendant Holt asserts, however, that he was entitled to a *Miranda* warning because he was immediately placed in handcuffs and therefore his "freedom of action [was] curtailed to a degree associated with formal arrest." *Berkemer*, 468 U.S. at 440. The factors a court is to consider when determining if someone is in custody and therefore entitled to Fifth Amendment protections are: "(1) the location of the interview; (2) the length and manner of questioning; (3) whether there was any restraint on the individual's freedom of movement; and (4) whether the individual was told that he or she did not need to answer the questions." *United States v. Hinojosa*, 606 F.3d 875, 883 (6th Cir. 2010) (citing *United States v. Panak*, 552 F.3d 462, 465 (6th Cir. 2009); *United States v. Swanson*, 341 F.3d 524, 529 (6th Cir. 2003); *United States v. Salvo*, 133 F.3d 943, 950 (6th Cir. 1998)).

Here, the questioning occurred outside in front of Defendant Holt's residence, and therefore this factor weighs in favor of a finding that he was not in custody. *See Salvo*, 133 F.3d at 950. As to the second factor, Defendant Holt and Officer Ambs both testified that the manner of questioning was merely the officer asking "what happened?" and that the length of questioning was around 10 minutes. This factor therefore also weighs in favor of a finding that Defendant was not in custody. With regard to the fourth factor, Defendant Ambs testified that he did not tell Defendant Holt that he did not have to answer the question, and therefore this factor weighs in

9

Defendant's favor. The balance might be closer if the third factor – whether his freedom of movement was restrained – was also in Defendant's favor.

Turning then to the third factor, and having had the opportunity to gauge Defendant's demeanor on the witness stand and to consider his testimony concerning his use of alcohol and both legal and illegal drugs, as well as his encounter with police, I find his recollection of being immediately handcuffed to be less credible than the testimony of the officers. The Court carefully listened to the testimony of each witness and weighed the reasonableness of their testimony in light of all the evidence presented. The officers' testimony was consistent that, upon arriving at the scene with the foreknowledge that a knife may have been involved, it was prudent and necessary to immediately pat down Defendant for weapons. Once no weapons were found on Defendant, the officers testified that the next step was to separate the parties and find out from each of them what happened. Both officers testified that Defendant Holt was not placed in handcuffs at this time, and the Court finds this testimony to be reasonable and credible. Accordingly, the Court concludes that the third *Hinojosa* factor weighs in favor of a finding that Defendant Holt was not in custody and therefore was not entitled to the Fifth Amendment protections of *Miranda* when he made the assault-related statements, and will thus suggest that those statements not be suppressed.

Once Defendant Holt was in the back seat of the patrol car, it is undisputed that he made no further assault-related statements and therefore it is not necessary for the Court to determine whether he would have been entitled to the protections of *Miranda* at that time or any time thereafter.

### F.	Conclusions

Accordingly, I suggest that Defendant's Motion to Suppress Statements be granted in part and denied in part. With regard to the assault-related statements, I suggest that the motion be denied because the statements were made during an investigatory detention and therefore the Supreme Court's *Miranda* doctrine did not apply and Defendant's Fifth Amendment rights were not violated. With regard to the drug-related statements, I suggest that the motion be granted and note that the government has no objection to their suppression.

### III.	REVIEW

Pursuant to Rule 72(b)(2) of the Federal Rules of Civil Procedure, "[w]ithin 14 days after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations. A party may respond to another party's objections within 14 days after being served with a copy." FED. R. CIV. P. 72(b)(2). *See also* 28 U.S.C. § 636(b)(1). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140, 106 S. Ct. 466, 88 L. Ed.2d 435 (1985); *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). The parties are advised that making some objections, but failing to raise others, will not preserve all the objections a party may have to this Report and Recommendation.

11

*Willis v. Sec'y of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this magistrate judge.

                                                  s/ Charles E Binder
                                                  CHARLES E. BINDER
Dated: February 18, 2011                       United States Magistrate Judge

### **CERTIFICATION**

      I hereby certify that this Report and Recommendation was electronically filed this date, electronically served on Roy Kranz and Philip Sturtz, and served on District Judge Ludington in the traditional manner.

Date: February 18, 2011                By    s/*Jean L. Broucek*
                                                  Case Manager to Magistrate Judge Binder